Good morning, Your Honors. May it please the Court, my name is Miriam Hubbard. I represent Mobile Home Park owners Gene Cashman and Athena Soutzas, appellants in this matter. I'd like to reserve three minutes for rebuttal. Okay. You try to keep track of your own time? Sure. Thank you. The central question in this case is whether this facial takings challenge to a rent control ordinance was properly decided on summary judgment. The answer is yes, and the authority for that answer is found in Richardson v. City and County of Honolulu. This Court's decision in Chevron v. Cayetano, presently I believe it's now Chevron v. Lingle, does not change that result. You haven't seen the second opinion yet, have you? No, Your Honor. I haven't. Then are you? Are you aware of that? Yes, Your Honor, I am. Okay. This case in all common, that is the divided ownership of property, government-controlled rents, and the ability to transfer the benefits of those rents. Under this narrow set of circumstances, which exist in Richardson and in this case, Hornbook economics predicts the transfer of a valuable property interest in the form of a premium. Yeah, but the question in front of us, what happens in fact? That is to say, do we actually take expert testimony on this question, or do we just talk about theory and what could happen? Your Honor, in a facial challenge such as this, we do not look at how the ordinance affects particular circumstances. We'll strike it down without taking evidence, in other words. I think that's your argument. Yes, Your Honor, it is, where this very narrow set of circumstances where these three criteria that I just spoke of exist. Why did we remand in Chevron, then? Your Honor, in Chevron, the facts are different than in this case. Oh, well, how do we know? Because you're telling me I don't need to know facts in this case. Well, Your Honor, you do need to know the three facts that I mentioned before. How do we know premium? Is it disputed? Did the city conceded it? No, Your Honor. Well, you don't dispute a fact, don't you? Your Honor, this case, as in Richardson, is the sort of case where premium is inferred by the operative provisions of the ordinance. Chevron is different because in Chevron, it's not landlord's sole source of revenue for controlling rent and removing the only mechanism by which a landlord can increase their revenues. That's the fact in Richardson. How do we know if we consider all the circumstances in this trailer park that anybody could afford to move in and pay a premium? Your Honor, we don't look at the facial challenge. We don't look at those. We just look at the face of the challenge, the operative. How is the premium built in to the face of the ordinance? By the creation, by the particular facts that I described. It says that every new buyer of a stall in a trailer park is going to pay a premium. No, Your Honor. It doesn't say every buyer is. What it says is in a facial challenge, this ordinance was adopted for the long term to cover not particular circumstances but for years and years. And looking at this as a facial challenge, what we do is look at the operative provisions of what they provide for. And with these three factors that I mentioned above that were present in Richardson and this case, what the courts have done, and this began with the court's decision in Yee v. City of Escondido where the court relied on economic principles to show that those three factors, the divided ownership, the controlled rents, and the ability to transfer the benefit of those rents would create a premium. Now in Chevron, there were different facts. My understanding of Chevron is the matter to be proven factually had not to do with the existence of the premium but as to whether the premium would be transferred. Chevron had the means to recapture any premium that perhaps the lessee would gain through the sale of his or her interest. Well, and that's not an issue here as to whether or not the premium, if any, might be transferred. That is to say it's entirely possible that the first tenant on the pad might well pass on the savings and not capture. Or at least, I mean, isn't that a factual question? No, Your Honor, not in a facial challenge such as this. The question is whether the But that doesn't make any sense to me that we can strike down or the district court can based upon what's going to happen to a premium and based upon the test that there will be no substantial advancement of the purpose of the statute without taking any evidence. Because I think you're saying, well, there's a possibility that it could work so badly that it's unconstitutional, and the mere possibility is enough to make it unconstitutional. You don't want to find out if, in fact, it works or doesn't work. I think that's your argument, but if it isn't, talk me out of it. Well, Your Honor, our argument hinges on the fact, on the unique characteristics of a facial challenge. And so it's looking to the general scope and effect of the regulation and not the regulation in specific circumstances. So the fact that the three factors that I have mentioned a couple of times are present, the economic principles reflect the premium. Let me go at it a different way. I think you win in a facial challenge if there is no possibility that the statute could be constitutional, rather than if that there is some possibility that it could be unconstitutional. That is to say, a facial challenge, if you're going to win, challenging the statute on a facial basis is there's no way that it could work, not that there is some possible way that it could not work. Well, Your Honor, it looks at the operative provisions of the statute. And there is nothing in the ordinance in this case to prevent the capture of a premium. And the economic principles say that in this situation, this very narrow sort of circumstances present in Richardson and in this case, that there will be a premium capture. Then you think where the district court went off the trolley was following Chevron, where the complex was leased in gasoline and the interrelationship between prices? Yes, Your Honor. That was the basis for the withdrawal of the judgment on summary judgment, was that the trial court judge thought that Chevron had required that the existence of a premium be proven as a matter of fact. In fact, we did go to trial and we put on the economic evidence. All of the economic experts, both the cities and the landlords, agreed that economic principle, the capitalization theory, would result in the creation of a premium. And, Liz, with many good theories, it ran into some facts, or at least as Judge Armstrong found them, some facts. Now, whether Judge Armstrong is right or wrong on the facts, I mean, we can review that under whatever standard we review factual findings. Well, Your Honor, getting to the empirical evidence that was required at trial, empirical evidence is neither required nor available in a facial challenge generally. In a facial challenge, again, as I've said, the court looks to the general scope and dominant features. I'd like to read just very briefly a quote from Judge Orrick in the summary judgment motion, where he explains that the possibility that transitory market distrust of rent control in Sonoma County may prevent a mobile homeowner from actually selling his mobile home at a premium does not cure the ordinance's facial defects. And the case that he cited for that proposition is Tahoe Sierra Preservation Council v. TRPA. That's Court's 2000 decision. That proposition is also found in Laval v. City of Palm Desert. In Chevron, it mentions that Richardson, this Court's decision in Chevron, mentions that Richardson made a finding of a premium. However, there is no evidence in either the district court decision or this Court's decision that that finding was anything other than the three requirements for a premium, the divided ownership, controlled rents, and the ability to transfer the benefits of controlled rents. With evidence of these three factors, the Court applied the principles of economics, as explained by Dr. Werner Hirsch, the same Dr. Hirsch whose economic principles were relied upon by the court in Yee and by the district court. That was before Mr. Hirsch ran into a few other people in Judge Armstrong's courtroom. Dr. Hirsch's principles of economics were also relied upon in the Richardson case. The other problem in a facial challenge is that oftentimes reliable evidence is not available. The Richardson case, for instance, because these cases need to be filed within one year, the kind of evidence that you come up with in that period of time is the kind of evidence that was presented at trial. You have experts doing studies in different cities, under different ordinances, under different times. You have an appraiser who conducts four studies and admittedly says that none of them are conclusive. In Richardson, that case was filed on the day that the ordinance became effective. So this is why there is no indication in the decisions that there was empirical evidence of particular sales of particular properties in that case. What do you do with, and I don't really like to sort of get down into the fine grain with sort of anecdotal as if it were totally convincing, but I was struck by a graph in the middle of the study from Dr. Lewis. It's in supplemental excerpts of record volume one at page 135. And the bottom line in the graph is the mobile home prices in Cotati Roanoke Park by comparison to county mobile homes that are not under price control and then ordinary homes not under price control. And that line of rent-controlled prices running from 1983 to 1989 is pretty flat and all those other lines are running up. That strikes me at least as sort of a rough cut that that price control ordinance for the rental on the mobile homes might be working. Your Honor, Dr. Lewis, the study was the previous rent control in Cotati. Again, it's not this particular rent control ordinance. What material ways has the rent control statute been changed so that this result I understand you're quite right in so saying. In what material ways has the ordinance been changed so that we might expect a different result than the one we see here in this study? The original ordinance, Your Honor, covered all kinds of rent. It was not limited to mobile home parks. The provisions of the ordinance were very unclear. There were not particular rental increases that were allowed and that sort of thing. The new ordinance is 24 pages dedicated solely to mobile home park rent control, limits the amount of rents that can be raised each year to 6% or the CPI, whichever is lower, includes vacancy control, which is one of the clearest indicators of a premium, not the sole creator of the premium, but one of the clear indicators. And the earlier ordinance did not include a vacancy control provision. The city has certainly argued that they read such a provision into the ordinance, but under California law, Thompson v. City of Escondido, that is not permissible. So there were a number of significant differences between the two ordinances, Your Honor. Okay. Fair response. I'd also like to talk briefly about the application of the substantial advancement test in this case. The substantial advancement test as applied in the narrow circumstances of Richardson-type cases is the test set out by the U.S. Supreme Court in Yee and interpreted in Richardson. It's a test that does not examine whether the ordinance, whether the beams will achieve the desired end. It's a test that examines the effect of the ordinance, here the creation of a premium, the transfer of the valuable property interest, and whether that effect advances the goals of the ordinance. For example, the lack of affordable housing. And the creation of a premium does not further either the stated goals of the ordinance or the unstated purpose of maintaining affordable housing. The test in Yee, the court said that the premium is related to the effect of the premium bears on the question of whether the ordinance causes a regulatory taking because it may shed some light on the sufficient nexus between the effect of the ordinance and the objectives it is supposed to advance. Richardson applied that test, changing the language a little bit, but staying with the intent of Yee, and said that the premium, the fact of a premium and a transfer of a valuable property interest, vitiates the cause and effect relationship between the use restricted, the rents, and the social evil the ordinance seeks to remedy, lack of affordable housing, for example. The district court in this case changed the initial term in the Yee test to whether the effect of the ordinance, from the effect of the ordinance to the operative rent and vacancy control provisions. So that basically changes the test more back to the rational basis test, whether the rent control that the ordinance is meant to take care of actually affects the purposes of the ordinance. I'll reserve the rest for rebuttal if there are no further questions. You'll hear from the other side and then you've got some time. Thank you. Thank you. Good morning, Your Honors. May it please the Court, I'm Henry Heder. I represent the city of Cotati, and joining me at council table is Jeffrey Walder, who is the city attorney. I think the issue of a premium, at least on this appeal, is irrelevant for several reasons. And I guess the most important reason is, as a matter of fact, the uncontracted You're giving us a premium by concession? No, Your Honor. Oh, okay. It was disputed. I thought we had one. It was disputed. It was disputed in this case, unlike Richardson. But why it's irrelevant on this appeal has been decided. It's unlike Richardson. In Richardson, according to this Court, in a Chevron opinion, it was undisputed that the ordinance necessarily would create a premium, which would prevent it from fulfilling apparently its only legitimate government purpose of preserving affordable housing in that particular instance. The difference in this case is like the difference in Chevron. We didn't concede that a premium would be produced. In Chevron, you have several different factors. You have Chevron Petroleum selling fuel, which it controls the price of that. You have Chevron owning the service stations and renting to distributors of petroleum and supposedly, prior to the rent control, could control the price of the lease. You don't have a factor here of selling any product at all. All you have is basically the lease, the space in a fair apartment, right? That's correct, Your Honor. Tell me how Richardson, which was sale of a condominium property, is unlike or is like Chevron. Well, how Richardson is unlike Chevron or unlike this case? I'm confused, Your Honor. I would apply Richardson, I think, and not Chevron, but take it from there. I will, Your Honor. Well, in this case, economic theory, according to Dr. Hirsch, would suggest that rent control, accompanied by vacancy control, which means the park owner theoretically cannot raise the rents to market level upon sale of the home, would cause the seller of the home to realize a premium on the sale of that home. That's the theory. And the question whether that necessarily will occur under this particular ordinance, I think, is a fact-dependent question, unlike what apparently was considered in Richardson. The reason why the owner of the trailer space is bound by the ordinance, limited by the ordinance, to what the rent will command, what rent he can command in the marketplace. Is that right? That's correct, Your Honor. But if the trailer space or if the trailer is sold by an occupant or the space is sold by an occupant, that price is not controlled. It's a free market price, right? The market price for the trailer is subject to whatever free market transaction that takes place. It's not controlled by the ordinance. So the owner of the trailer can get a premium, but the owner of the space cannot, right? And that's on the face of the ordinance. No. The face of the ordinance has nothing to do with whether or not a premium would create it. Let me ask you, how can the owner of the trailer park collect the premium, if there is one? Isn't that exactly what the ordinance is attempting to bar? No, Your Honor. That's not exactly. That's quite not what the ordinance is focused on. I could write an opinion in this case and say that the city has waived any premium collection by trailer park owners under this ordinance, right? Well, Your Honor, could I explain what my basis of my argument is? But, I mean, that's the bottom economic line that you're advocating. Well, Your Honor, I think it's more complicated than that. I think there are complex economic factors here that come into play that preclude a ruling as a matter of law that a premium is going to be created. First of all, there's a tension. There are stated purposes in the ordinance that are legitimate government purposes that are totally unaffected by the presence of any premium. One of them would be, for example, protecting the equity in the current residents' homes. And that's where the tension lies. They're free to sell the trailer to whoever they please. Well, if you don't have vacancy control, they're not. Because one of the reasons for vacancy control, from the city's point of view, and the question is whose property rights are getting gored here? From the city's point of view and their findings and its legislative wisdom, determine that the park owner, because of the shortage of spaces, because of the immovability of the homes, because of the demographics of the people that live in these parks, the park owner has the ability to raise rents upon the sale of a home to levels that are above what a free market, a competitive market, would allow. And by doing so, he's able to arrogate to himself. He's able to take the equity of his homeowner in his home and take that equity and transfer it to him. Can we back off for just a minute and explain precisely how the vacancy decontrol works? And once we have that on the table, then I think I'm in a better position to understand your argument. Just how does the ordinance set up vacancy control? How does it work? The ordinance specifically prevents rents from being raised upon the sale or transfer of a mobile home. They can be raised once annually. So the owner sells to another owner. That is not a time at which the owner of the pad can raise the rent for the pad. No, Your Honor, unless it happens to coincide with the anniversary of the annual rent increase. But that's what you mean when you say vacancy control. Correct. In the prior ordinance, and I do disagree with counsel, the prior ordinance only allowed rents to be raised once annually. It didn't have an express vacancy control provision. But because it only allowed rents to be raised annually, it's regarded as one that is lacking a vacancy decontrol provision. And for all practical purposes, I think the uncontradicted evidence at trial in the finding by the judge was that it provided for vacancy control. And actually, the current ordinance, which is under challenge, actually recites on its face that one of its purposes was to continue infectious vacancy control. Yeah. So I've got the following question, and that is the test established under Chevron, and I'm, I mean, this is the way the game works. I lost in Chevron, and this is the test applicable. The test is whether or not the act, or in this case the ordinance, the appropriate inquiry is whether the ordinance substantially advances a legitimate State interest. And that's the test. Okay. The existence of the premium and the capture of premium by the tenant is one of the ways that would prevent the State interest from being substantially accomplished. But is the existence and possible capture of the premium the test, or is that merely a mechanism by which we try and figure out whether the test is satisfied? What is the State interest here? And in your view, how is it being substantially advanced? The ordinance on its face, Your Honor, has seven stated purposes. One of the purposes, obviously, is to provide the park owner with a fair and reasonable return. Let's put that one aside because that can't be the sole purpose of the ordinance. Say you wanted to do that, it simply wouldn't have an ordinance. But let's talk about basically the stated purposes without going back and reading them. Talk about the disparity in bargaining power between the residents of the parks and the owners. Protecting the existing residents against excessive rent increases. And more importantly for purposes of this premium argument, protecting the equity or investment in their home. I keep waiting for you to tell me that one of the purposes is keeping the price down. Your Honor. As you say, keeping the rental private, keeping mobile homes affordable. Your Honor, the court found that that was an unstated purpose of the ordinance. Okay. But again, on a facial claim, on a facial claim, which was made here, you necessarily have to show that the ordinance isn't going to further any legitimate government purpose. And all I'm saying is as long as this ordinance advances any of those seven stated purposes, it doesn't matter if it creates a premium. That's a legislative choice. The legislature may well decide that you have a competing issue here. Are we going to protect the equity in the homes? Protecting the equity in the homes, realize that there is a relationship between the rents charged and the price of the homes. It's like the capitalization theory. It's the same theory. It only works when rent increases are substantially above what would be a free market rent. Then the equity starts to get lost out of the home. But if the legislature says our real problem here is to protect the equity in the homes, we're not so much worried that this might create a premium, make the house less affordable to the new buyer, who's going to have the benefit of rent control and having equity build up in his home anyhow. You depreciate the value of the patent in doing that. So there's got to be a premium created, right? Only if, and Hirsch conceded this. This is why this whole question is fact dependent. His premium theory postulates that the premium is created when the rents are driven below market rent. And he assumes that rent control always drives rents below market rent. Well, that's not correct. In rent control ordinance that allow a substantial percentage pass-through of CPI as an automatic rent increase, and during years in which the CPI is very low in terms of increase, park owners in non-rent-controlled parks are probably going to be raising their rents higher than park owners. I mean, park owners in rent-controlled parks may automatically get a rent increase that's higher than other park owners are charging. If there are owners selling their trailers undepreciated at more than PPI under this ordinance, that's what it permits, then the owner of the trailer is selling in excess of PPI. There's no limit whatsoever. And there's no required depreciation, which the pet owner is up against. That's true. The evil that the ordinance is intended to address, you know, it's not an ordinance designed to protect the investment of the park owners, quite frankly. It's designed to protect the investment of the mobile homeowners. The value goes down, and the value of the trailer goes up. But as this court pointed out in Chevron, all price regulation, all land regulation affects the value of property. And in this case, the question is whether or not in doing so, number one, is the park owner guaranteed a fair and reasonable return, and number two, is the city, in passing this ordinance, substantially furthering legitimate government interests. Okay. Let me see if I can understand your argument about protecting the equity in the homeowner, not the pad owner, but the homeowner. The argument, I guess, is as follows. The pad is being ranted at, I'm just making these numbers up, $10 a month. I mean, I'm choosing artificial numbers. The mobile homeowner says, terrific, I'll move my home onto this. They're not really very mobile. I mean, once they're there, they're there. At that point, the pad owner says, terrific, it's now going to cost you $100 a month instead of $10 a month. The cost of moving that trailer is such that at that point, the value of the trailer has substantially diminished. And you're saying that, well, you want to keep the pad owner from doing that once he's sort of captured. This is a different form of capture. I'm not capturing premium. I'm capturing trailer. Once I've captured the trailer and made it very difficult for him economically to move the darn thing, now I'm going to get him. Is that the argument as to preserving the equity and the value of the homeowner? Yes, Your Honor. It's worse than that because even if you could economically move the home, if you look at the number of vacant spaces, and then there are very few in this county, and even the few that exist, most parks will only allow new homes or newer homes to be brought in, there isn't any place to move them if you could economically afford to use them. So theoretically, absent vacancy control, a park owner could say, and there's – You can take them all up to Dillon Beach. He could raise the rent so high that either the person will walk away from the home and lose the home, the park owner will sell it for back rent at an auction and capture the home and then sell the home himself. And that's theoretically what can happen if you have a park owner that just is completely ruthless in any event. That's the theory behind protecting the equity in the homes, and that's a purpose that was accepted as legitimate in this Court's Leval opinion too, although that was a substantive due process case, that the purpose of protecting the equity in the homes was recognized as important. And in the Carson Harbor Village case, this Court also recognized that, you know, the fact that a mobile home rent control ordinance may create a premium is actually an admission, that it's doing its other job, which is protecting the equity in the homes. But let's get back – I mean, this premium issue, again, it depends on complex factors. It depends on the rent control ordinance, number one, driving the rents substantially below market rent, such as the potential for the premium being captured, and number two, it depends on the market power of the person, the seller of the mobile home, to capture that premium. In other words, you've got to convince a buyer in a state where mobile home rent control ordinances either come and go out of political favor depending on the city council or are constantly under challenge in the courts, as this Court is well aware, well, be confident, we're going to have rent control for the next 20 years, and so you should pay, you know, $30,000 above book price for this home. That's not how the real market operates, and that's not how the evidence came in at trial. And finally, if you look at the purposes of the ordinance, which are substantially further, and they're legitimate purposes, without respect to any premium, even if you look at affordable housing, unless the seller of the home is 100 percent successful in capturing that premium, which won't happen in the real world for any number of reasons, then even under rent control with vacancy control, even if a premium is created of some sort, the home is still going to be more affordable to that buyer than it would be without vacancy control because his future savings in rent coupled with the ability to sell the home and preserve and build up equity in the home will outweigh the extra price he pays up front. So in the context of mobile home rent control, the premium theory advanced in Richardson really doesn't have much application. Number one, because mobile home rent control ordinances serve purposes other than the Richardson ordinance, which aren't affected by the existence of a premium and maybe are at odds with them, for example, protecting the equity in the homes. And number two, unless you had a complete, perfect capture of the premium, the homes are still going to be more affordable with vacancy control. And that's why this premium theory, number one, is irrelevant. But number two, as a matter of fact, it was found that there wasn't a premium created after 20 years of rent control with vacancy control in this town. And so what we're being asked to do by the park owners in this case is say, look, we should close our eyes and blind our eyes to the actual facts, and we should rely solely on economic theory and predictive fact. Now, granted, this court didn't require, the district court didn't require empirical evidence. It didn't require it. It was presented. And unfortunately for the park owner in this case, yes, if this would be the first mobile home rent control ordinance ever passed with vacancy control and it had only been in operation for seven months and no homes had been sold, it would have been a lot more speculative as to what would happen in terms of the expert testimony. Unfortunately for the park owners in this case and Dr. Hirsch, we have over 20 years' worth of empirical evidence that's been gathering in Sonoma County, and you can't ignore that evidence. If you're going to predict what an ordinance is going to do, what better place to look than where it's been operating or where we're in control with vacancy control has been operating for over 20 years. The facts are there from which you can predict the future. Now, they turned a blind eye to those facts, and that's why Judge Armstrong found their evidence less persuasive. But the fact is, number one, as a matter of fact, no premium. And it was uncontradictive because Dr. Hirsch didn't try to prove that one was being created. He didn't try to quantify what it would be to see if it would make the homes more or less affordable. He didn't do any of that. All he did was, I would expect, I mean, the strongest evidence they had was he could not rule out the possibility that when the CPI rose more than 7 percent that the homeowners might capture some sort of premium. That's it. And if that's the basis for knocking down this ordinance, there's something wrong. And I don't think that's the law. When we tried this case, we read that Chevron case back and forth, and we tried this case as best we could do using the guidance in Chevron. You had a judgment. You were faced with a judgment without Chevron. That's correct, Your Honor. And you prevailed on the district court to set that aside. So in the first instance, she agreed to follow Richardson. It was Judge Oreck at the time before he retired. Because of Chevron that she did. Judge Oreck realized that he had misread, like the district court in Chevron, that Richardson required such a finding as a matter of law. Does the Court have any other questions? Thank you. Thank you very much. You've reserved some time if you'd like it. Thank you, Your Honor. What do we do with this? I mean, he keeps making this point, we have to look at the facts. That's really awkward. I don't like doing facts. Do we have to? Your answer is no. And why? Why don't we have to look at facts? Our answer is no. And, Your Honor, perhaps I can better illustrate by Mr. Heeter was talking about whether the ordinance actually – whether the rents are actually below or above market at any particular time. The problem with a facial ordinance where the action is brought so soon is oftentimes the evidence isn't available. And the question is, at what point in time are we going to look at whether it's above or below market? The point is, this is a rent control ordinance. It is going to, at some point over the duration of this ordinance, put markets below rent. And under the facts of Richardson, which I'd also like to mention, Mr. Heeter – Market value below rents or market value exceeds rents? Excuse me, Your Honor? At some point over the time of the ordinance, since it is a rent control ordinance seeking to keep rents below market, at some point it certainly is going to do that. I'd like to – At least that's the plan. Yeah. I'd like to point out in the Richardson case, in the district court opinion at page  1, the court focused on the purpose of affordable housing. But in fact, that ordinance also had a number of the same purposes as does the Cotati ordinance. It addressed the inequality of the bargaining power, favoring the lessors, increasing rents, forcing lessees to give up their leases and look for other accommodations. So there were a number of purposes. And to try and answer Your Honor's question about the role of the premium in the substantial advancement test, for purposes – for the very narrow purposes of this particular sort of case, the premium is essential to the substantial advancement test. The premium vitiates the required nexus between the effect of the ordinance and the purpose of the ordinance. So regardless of what the government purpose is, this transfer of a property right – again, it's not just the premium. It's the transfer of the premium. This transfer of a property right vitiates any legitimate government interest. And I agree with you to this extent that the existence and role of the premium is critical to a theoretical approach. But what happens when we have facts? And the test is not formulated, of course, in terms of premium. The test is formulated in terms of accomplishing a purpose. Your Honor, I believe that a – the cases say that a premium-based challenge is a facial challenge. I believe you get into facts when you're bringing an as-applied challenge, which is a fair return kind of an argument. But in a facial challenge, you just don't know what facts to talk about at what particular purpose in time or whether the facts are developable in the short period of time between the adoption of the ordinance and the time the case is litigated. So I would like to close by saying that appellants do not dispute the fact that Katady can adopt a rent control ordinance. What we do dispute is the manner in which it's done. Katady cannot adopt an ordinance that provides for the transfer of a valuable property right. That is the taking. And we would ask that this Court reinstate the decision on summary judgment. Thank you, Your Honor. Roberts. Thank you very much. I thank both of you for your argument. And Judge Beezer and I are particularly interested in this topic. You may find we have to defer submission on this case pending another decision of a case submitted in this Court. So don't get too anxious out there. Thank you. It's a pleasure to be here in the Court on the meeting of Chevron. I thank both of you for your very useful arguments. Thank you. The case of Cashman v. City of Katady is now submitted.
judges: Beezer, Alarcon,w. Fletcher